AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of West Virginia



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with
Facebook profile #100000069832848,
user ID "Ricky Dee"

)
)
)
)
)
)
)

Case No.  2:17-mj-00070

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1073 | Fugitive from justice, flight to avoid prosecution |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SDUSM

*Applicant's signature*

Jeremy G. Honaker, Deputy U.S. Marshal

*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 15, 2017

Judge's signature

City and state:  Charleston, West Virginia

Dwane L. Tinsley, United States Magistrate Judge

*Printed name and title*

## ATTACHMENT A

This warrant applies to information associated with the Facebook profile #100000069832848, user ID "Ricky Dee," that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

## I.   Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a) All contact and personal identifying information associated with the account, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; notes; wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

2

(l)  All information about the user's access and use of Facebook Marketplace;

(m)  The types of service utilized by the user;

(n)  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)  All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II.  Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1073 involving Ricky Walker since April 2017, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)  Evidence indicating the process taken to hide the physical location of Ricky Walker.

(b)  Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic

3

context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

4

A F F I D A V I T

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

I, Supervisory Deputy United States Marshal Jeremy Honaker, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.   I make this affidavit in support of an application for a search warrant for information associated with Facebook username "Ricky Dee," profile #100000069832848, and/or associated with URL: www.facebook.com/ricky.dee.792 (the "TARGET ACCOUNT") which is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure to require Facebook to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the user ID.

2.   I am currently employed as a Supervisory Deputy United States Marshal with the United States Marshals Service ("USMS") and have been so employed since July 2001.  I am assigned to the Charleston, West Virginia, USMS office.  My duties as a Supervisory

Deputy United States Marshal often involve investigating federal narcotics laws and firearm violations. During my employment with the USMS, I have conducted numerous investigations involving violations of Federal firearms law and Federal narcotics law.

3.   During my tenure with the USMS I have investigated and assisted in numerous criminal violations of federal firearms and drug laws including but not limited to, violations of 21 U.S.C. §§ 841, 843, 846, 848, and 856; 18 U.S.C. §§ 922, 924(c), and 1956; and 26 U.S.C. §§ 5601, 5861. I have attended the Criminal Investigation Training Program at the Federal Law Enforcement Training Center (FLETC) at Glynco, Georgia, and completed training courses in conducting investigations of individuals who possess with intent to distribute controlled substances, and of seizures of illegal drugs, drug proceeds, and firearms.

4.   I have participated in the debriefing of defendants, witnesses and informants, as well as others with knowledge of the manner in which controlled substances are distributed, drug proceeds are laundered and concealed, and firearms are possessed and used in connection with illegal activities. I have participated in investigations in which I have conducted or participated in physical surveillance, electronic surveillance, undercover transactions, and the execution of search and arrest warrants.

5. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other Deputy United States Marshals, other agency Special Agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. This Affidavit is made in support of an application for a Search Warrant for the information associated with the following Facebook account profile #100000069832848, which is believed to be used by Ricky Walker ("WALKER") and is further described in Attachment A.

7. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that WALKER is a fugitive from justice and in violation of 18 U.S.C. § 1073.

## PROBABLE CAUSE

8. The United States government, including the USMS, is charged with locating and apprehending WALKER, who is currently a federal fugitive, having a federal arrest warrant issued for violations of 21 U.S.C. § 841(a)(1). Law enforcement believes that WALKER is now actively evading apprehension.

9. On February 20, 2014, a federal grand jury sitting in Charleston, West Virginia, and within the Southern District Of West Virginia, returned an indictment against Ricky Walker related

3

to a violation of 21 U.S.C. § 841(a)(1) - distribution of quantities of oxycodone and oxymorphone. On the same day, this Court issued an arrest warrant for WALKER.

10. In February 2014, Special Agents with the Drug Enforcement Administration attempted to locate WALKER at his residence located at 146 Post Oak Lane, Sanford, North Carolina. WALKER was not present, however, agents advised his family members who were present that a federal arrest warrant had been issued for WALKER, and that he needed to immediately self-report to the nearest office of the United States Marshals Service.

11. In June 2014, members of the United States Marshals Service Detroit Fugitive Apprehension Team (DFAT) attempted to locate WALKER at a residence they identified as a more recent address located at 12750 Corbet Street, Detroit, Michigan. WALKER was not present, but agents advised occupants of the residence that WALKER was wanted by law enforcement. The occupants at the residence acknowledged that WALKER was an acquaintance who had recently visited them at that address. They further advised that WALKER lived somewhere in the Detroit area, but did not provide another address.

12. On two separate occasions, Walker had been featured in a television program ("Detroit's Most Wanted") airing in the greater Detroit, Michigan, area. The most recent episode was broadcast on May 26, 2017. An anonymous tip came in directing law

4

enforcement to a residence located at 12510 Kilbourne Street, Detroit, Michigan, where the tipster claimed WALKER was staying. Deputy United States Marshals responded to the residence and spoke with a Ladawn Smith who lived there. Smith advised that WALKER had lived at the residence from February 2016 through April 2017. She further advised she did not know his current whereabouts.

13.   Through access to publically available information, the USMS has identified WALKER as the user of profile #100000069832848. To further the investigation and apprehension, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from the profile.

14.   Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and

5

zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

15. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request "accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

16. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also

include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

17. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.

18. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

19. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated

7

with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

20.    Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.

21.    These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

22.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites.

8

24.    Facebook users can also become "fans" of particular Facebook pages.

25.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

26.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

27.    Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

28.    The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

29.   Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

30.   In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that user's access or use of that application may appear on the user's profile page.

31.   Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile; profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications .

32.   Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time

of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

33.  Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34.  As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook

11

user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.

35. This "user attribution" evidence is analogous to the search for "indicia of occupancy "while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.

12

36. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

37. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38. This warrant is being sought under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), and I request that Facebook be required to provide the government copies of the records and other information (including the content of communications) described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

13

## CONCLUSION

39.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A). Specifically, the Court is "a district court of the United States that - has jurisdiction over the offense being investigated." 18 U.S.C. § 1073.

40.  I submit that the foregoing Affidavit supports probable cause for a search warrant requiring Facebook to disclose to the government information associated with Facebook profile #100000069832848, user ID "Ricky Dee," and search of that information by government authorized persons to seek the items described in Attachment B.

41.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Further your affiant sayeth naught.

JEREMY HONAKER
Supervisory Deputy U.S. Marshal


Sworn to before me, and subscribed in my presence, this 19th day of June 2017.

DWANE L. TINSLEY
United States Magistrate Judge

14